UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-190(3)(DSD/LIB)

United States of America,

        Plaintiff,

v.                                                        **ORDER**

Sandra Lee Bart,

        Defendant.


This matter is before the court upon defendant Sandra Lee Bart's motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255.  Based upon a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion and denies a certificate of appealability.[1]


**BACKGROUND**

On August 8, 2016, a jury convicted Bart of conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371; conspiracy to commit fraud in foreign labor contracting, in violation of 18 U.S.C. § 1349; and conspiracy to commit wire or mail fraud, in violation of 18 U.S.C. § 1349.  The court sentenced her to 60

---

[1] This motion has been amply briefed by both parties, including a sur-reply by the government.  See ECF Nos. 349, 358, 364, 368.  Because the court permitted the government to file a sur-reply, it denies Bart's request to strike that submission. See ECF No. 377, at 1-2.

months' imprisonment for each count to be served concurrently and to be followed by two years' supervised release.   Bart appealed her conviction and the Eighth Circuit Court of Appeals affirmed. See United States v. Bart, 888 F.3d 374 (8th Cir. 2018).   Bart thereafter filed a petition for certiorari with the United States Supreme Court, which was denied on October 1, 2018.   Bart v. United States, 139 S. Ct. 266 (2018).   The Supreme Court denied her subsequent request for rehearing on November 19, 2018.   139 S. Ct. 588 (2018).   Bart timely filed the instant motion on November 30, 2019, arguing that her trial counsel was constitutionally ineffective in numerous respects.

Bart's convictions arise from her role in a scheme to bring seasonal workers to the United States under the federal H-2A work visa program and then illegally require them to pay a recruitment fee, travel costs, and kickbacks on their wages.   Bart's co-conspirators, Wilian Cabrera and John Svihel, pleaded guilty to charges relating to the scheme and testified against her at trial.

Bart, Cabrera, and Svihel were charged with conspiring to defraud the government by recruiting employers in the United States to employ workers from the Dominican Republic through the H-2A temporary work visa program.   The superseding indictment alleged that Bart and her co-conspirators devised a plan to obtain money

in the form of illegal fees and withholdings from the visa workers and by filing false immigration documents with the Department of Labor (DOL) and the Department of Homeland Security (DHS).

The H-2A program allows agricultural employers in the United States to hire foreign workers to meet seasonal labor needs.  To obtain an H-2A visa, a sponsoring domestic employer submits an application for temporary employment certification (Form 9142) to the DOL.  Once the DOL issues the employer a certified Form 9142, the employer must then submit the original Form 9142, along with a petition for a nonimmigrant worker (Form I-129).  When the DOL gives final approval for the petition, the foreign worker then may apply for an H-2A visa.

The employer must certify in the Form 9142 under penalty of perjury that: it did not require compensation from prospective workers as a condition of employment; it will pay transportation costs to bring the workers to the United States; it will pay to house the workers in the United States; and it will pay the wage rate set annually by the DOL.  An employer applying for a Form 9142 must attest that: it has not directly or indirectly received payment of any kind from the potential employee for any activity relating to obtaining the labor certification; that the employer has and will contractually forbid any foreign labor recruiter used

by the employer from seeking or receiving payments from prospective employees; that the employer will comply with applicable employment laws and regulations; and that the employer will pay all covered workers at least the highest of applicable wage rates.

An employer filing a Form I-129 likewise must attest that: no H-2A employee paid the employer, any service, or agent any compensation as a condition of employment; and that the employer agrees to the conditions of H-2A employment, which includes paying any covered worker's travel expenses from the worker's home country to the place of employment in the United States if the worker completes fifty percent of the contract period.

Bart and Cabrera recruited and paired domestic employers and workers from the Dominican Republic under the H-2A program under their business, Labor Listo. Cabrera lived and worked in the Dominican Republic and readily recruited workers from his community to work in the United States. Bart operated out of her lawn care business, Horizon Lawn Management, in Ohio.[2]

In 2010, Bart and Cabrera recruited Svihel to employ workers from the Dominican Republic to work on his farm in Minnesota (Svihel Farm). Svihel worked with Bart and Cabrera through May

---

[2] Bart hired foreign workers for Horizon under the H-2A and H-2B work visa programs starting in approximately 2002 and was familiar with the process.

4

2015.  Each year, Svihel signed multiple Forms 9142 and Forms I-129 that were submitted to the DOL.

The government alleged that between 2010 and 2015, Bart and Cabrera required recruited H-2A visa workers to pay them a fee to secure employment in the United States; that Bart, Cabrera, and Svihel required the workers to pay for their own flights to and from the United States; and that Svihel required the workers to pay him illegal cash kickback fees starting in 2011.

The government further alleged that Svihel falsely attested on the submitted Forms 9142 and Forms I-129; that Bart, Cabrera, and Svihel had not sought or received payments for any activity related to obtaining labor certification; that none of the H-2A workers had paid or agreed to pay any form of compensation as a condition of employment; and that Bart, Cabrera, and Svihel would pay the H-2A workers the prevailing wage.

Bart was represented by Piper Kenney Wold during the trial. Bart contested all of the charges against her and specifically denied knowing of any false statements or illegal payments to Cabrera or Svihel.  Bart also maintained that she earned any fees paid to her by the H-2A workers by providing legitimate and compensable services.  The jury nevertheless convicted her on all counts.  Bart now argues that her trial counsel failed to

adequately represent her at trial and that her appellate counsel was also ineffective. The court will address each of Bart's arguments below.

## DISCUSSION

Section 2255 provides a federal inmate with a limited opportunity to challenge the constitutionality, legality, or jurisdictional basis of a sentence imposed by the court. This collateral relief is an extraordinary remedy, reserved for violations of constitutional rights that could not have been raised on direct appeal. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). When considering a § 2255 motion, a court may hold an evidentiary hearing. See 28 U.S.C. § 2255(b). A hearing is not required, however, when "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (citation and internal quotation marks omitted). Here, Bart does not request a hearing and the court independently finds that no hearing is required.

6

I.    **Ineffective Assistance of Counsel**

To establish a claim of ineffective assistance of counsel, a defendant must meet both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that her counsel's performance was so deficient that it fell below the level of representation guaranteed by the Sixth Amendment. Id. at 687. Second, she must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. Review of counsel's performance "must be highly deferential; we indulge a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." Driscoll v. Delo, 71 F.3d 701, 706 (8th Cir. 1995). "For that reason, 'strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" Id. (quoting Strickland, 466 U.S. at 690).

A.    **Cabrera's Cross-Examination**

Bart first contends that Wold was constitutionally

ineffective in failing to adequately prepare for and conduct Cabrera's cross-examination. Bart specifically argues that Wold erred in failing to use Cabrera's prior inconsistent statement against him and in failing to investigate other possible impeachment material.

### 1.   Prior Inconsistent Statement

On July 27, 2015, when Cabrera was in custody, he had a phone conversation that was recorded and transcribed by the government.[3] Marti Decl. Ex. C.   In the call, Cabrera said the following about Bart:

> She doesn't know anything, nothing.  She only knows that [unintelligible] was taken down ... No, no, she didn't do anything wrong.  She's only tried to help people.  You understand? ... Because she's heard the pleas that people make saying they're hungry and thanks to her, uh, many people are eating.  But people didn't pay it back the same way.

Id. at 2-3.   Wold did not cross-examine Cabrera regarding this statement or reference it in presenting Bart's case to the jury. According to Bart, Wold's failure to do so constituted ineffective assistance of counsel because, had she raised the issue, she could

---

[3] The name of the person with whom Cabrera was speaking is redacted in the transcript, but it appears that the government and Wold were aware of that person's identity.  See ECF No. 358, at 20 (stating that the government provided Wold with an unredacted copy of the transcript).

have effectively undermined Cabrera's credibility and thus his testimony, which was central to the government's case.

Having presided over the trial, the court is aware of the crucial role Cabrera played in the jury's guilty verdict.  He and Svihel were the key government witnesses and their credibility was squarely at issue.  The failure to impeach the testimony of one of the government's key witnesses with a "grossly inconsistent" prior statement may constitute ineffective assistance of counsel when that failure "alter[s] the entire evidentiary picture." Driscoll v. Delo, 71 F.3d 701, 711 (8th Cir. 1995) (quoting Strickland, 466 U.S. at 695-96); Whitfield v. Bowersox, 324 F.3d 1009, 1017 (8th Cir. 2003), vacated in part on other grounds by, 343 F.3d 950, 950 (8th Cir. 2003).  "Specifically, '[a] failure to impeach constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt.'" United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011) (quoting Whitfield, 324 F.3d at 1018 and citing Driscoll, 71 F.3d at 711).

Under the circumstances presented, the court cannot conclude that Wold's failure to introduce Cabrera's prior statement

violated Bart's constitutional rights.[4]  First, the timing of the in-custody statement undermines its impact.  The phone call took place on July 27, 2015, two months after Cabrera was taken into custody, and nearly one year before he admitted his role in the offense and pleaded guilty.  See ECF Nos. 141, 142.  In the call itself, Cabrera maintained his own innocence and even mentioned that he may pursue legal action due to the false accusations against him.  See Marti Decl. Ex. C, at 2-3 ("I've never done any bad things .... when I get out they will have a problem because I will have to sue them because they accused me and I went to court as, as a facilitator.").  Cabrera testified at trial that he maintained his innocence for so long because he hoped the Dominican workers would retract their statements to ensure that they could continue working in the United States.  Trial Tr. at 506:5-17. With this context, Cabrera's statements that Bart did not know anything and did not do anything wrong carry less weight.  It makes sense that Cabrera would maintain the innocence of his co-conspirator, as he maintained his own.  This is particularly true in light of his hope that the workers would recant their statements thereby undermining the case.

---

[4]  The court will assume that Wold made a strategic decision not to address the statement during trial.

Second, Cabrera's trial testimony was consistent, in Bart's favor, with the excerpt.  Cabrera consistently maintained that Bart "only tried to help people," and "has a good heart."  Marti Decl. Ex. C, at 3; Trial Tr. at 497:21-22.  But that message, which the jury heard, was insufficient to change their verdict. The court is not persuaded that the jury's determination would have been different had they been privy to the phone call.  To the extent Cabrera's statements differ, they are certainly not "grossly inconsistent."  And, as noted, the differences can be readily explained.

Third, Wold did challenge Cabrera's credibility by positing that he was testifying against Bart to receive a more lenient sentence.  Trial Tr. at 433:9-13, 510:11-512:1.  Given the issues already identified with the statements made in the phone call, Wold's decision to try to undermine Cabrera's testimony in that way was reasonable.  The fact that the jury ultimately believed Cabrera despite Wold's impeachment attempt does not mean that her performance was deficient.

Viewed as a whole, Cabrera's statements in the phone call raises few doubts about the truth of Cabrera's trial testimony or Bart's culpability.  As a result, even if Wold's performance was deficient in this regard, the court cannot conclude that the

results of the trial would have been different had she tried to use the prior statements against Cabrera.

### 2.   Other Impeachment Material

Bart next argues that Wold was constitutionally ineffective in failing to investigate evidence that could have undermined the government's contention that Bart was the mastermind behind the conspiracy.  Bart cites to two pieces of evidence that she believes could have aided in such an effort.  First, a Svihel Farm H-2A worker informed the DOL that Svihel told him that Svihel paid Cabrera $500 per Dominican H-2A worker.  Marti Decl. Ex. D.  The employee did not mention Bart.  See id.  Second, another Svihel Farm worker, J.F., told the grand jury that "just through conversations it sounded like [Svihel] must pay [Cabrera] something but [he] had no idea how much."  Marti Decl. Ex. E, at 4:2-5, 14:13-15.  According to Bart, Wold should have fully investigated these statements to help establish that Svihel and Cabrera had an independent agreement she was not a party to, which would have undermined their credibility and undercut the government's theory that she was the leader of the conspiracy. The court is unpersuaded.

Neither witness's testimony establishes either proposition. The first statement is hearsay by a Dominican worker, which

included no details or other information.  See Marti Decl. Ex. D.
Even if Wold had followed up with the witness (assuming she did
not), it is far from certain that any information she could have
gained would be enough to effectively undermine the government's
case.  The second statement by J.F. is also hearsay and, in any
event, is vague and uncertain.  J.F.'s statement was also
undermined during trial by a Dominican H-2A worker who testified
that he and other H-2A workers took pains to conceal their payments
from him and certain other workers.  Trial Tr. 244:22-45:19.

Based on the nature of the statements made and the other
evidence introduced at trial, Bart has failed to establish that
interviewing or otherwise investigating the witnesses would have
changed the outcome of the trial, even if the court assumes that
Wold was deficient in failing to interview the witnesses.  See
United States v. Davis, 406 F.3d 505, 510 (8th Cir. 2005)
(rejecting ineffective assistance of counsel claim because
defendant "failed to establish prejudice, that is, a reasonable
probability that had his trial counsel interviewed the
eyewitnesses prior to trial, the outcome of his trial would have
been different"); Payne v. United States, 78 F.3d 343, 348 (8th
Cir. 1996) (same).

B.    **Bart's Services to H-2A Workers**

Bart's defense at trial was that she provided services to the H-2A workers for which she was legally compensated.  For example, Bart helped the workers secure social security numbers, arranged for workers to meet with the social security office, provided tax forms, reviewed completed tax forms to ensure accuracy, arranged for workers to meet with knowledgeable H&R Block tax preparers in Cleveland to help limit their tax liability, and assisted workers with health issues requiring hospitalization.  She denied that the $216 she received per worker was mandatory or a recruitment fee. Bart now argues that Wold did not adequately or completely present this defense to the jury because she failed to call (1) witnesses to corroborate the services Bart provided; (2) a tax expert to value Bart's tax assistance to the workers; (3) an H-2A visa expert to support the legality of the workers' payments to Bart; and (4) H-2A workers who did not pay fees to Bart.  Bart also argues that Wold inadequately examined witnesses, including herself, who could have compellingly testified about the services Bart provided.

### 1.   Failure to Call Certain Witnesses

Bart first argues that Wold should have called a social security officer employee to corroborate her own testimony that she assisted the workers with getting social security cards.

Wold's failure to do so was not unreasonable given that the government did not challenge Bart's claim to have assisted the workers in this way.  Bart's testimony in this regard was undisputed, and it would not have meaningfully assisted the jury to have another witness testify on the topic.  Bart has certainly not established, as she must, that had she called such a witness, the outcome of the trial would have been different.

Bart next argues that Wold erred in not calling a tax expert to value Bart's tax assistance to the workers, which Bart testified about.  Again, the government did not contest that Bart provided tax assistance or the value of her work.  The government did question why Bart required the workers to travel to an H&R Block in Ohio, at their own expense, to receive tax services, but Bart was able to explain that the H&R Block in Ohio was uniquely familiar with H-2A tax issues and saved the workers money as a result.  Trial Tr. 262:8-63:10, 287:20-88:8, 329:25-30:15, 767:6-69:8, 776:14-77:21.  And, as the government argues, the issue at trial was not whether Bart provided valuable services to the workers, but rather whether she required the workers to provide her with compensation in order to secure employment.  A tax preparer would not have been able to shed light on that crucial issue.  As a result, the court cannot conclude that Wold was

deficient in failing to call a tax expert.  Nor can the court conclude that Bart was prejudiced due to that failure.

Bart thirdly argues that Wold should have called an H-2A expert to testify about the regulations underlying the crimes charged in the superseding indictment.  According to Bart, an expert could have explained to the jury what the regulations were and how they were violated (or not violated), which would have resolved any likely confusion over the regulations vis-à-vis the crimes charged.  Bart also argues that an H-2A expert could have explained to the jury that she was permitted to charge the workers for the services she provided.

As to the first point, as already explained, the jury instructions clearly explained the charges and the elements of each crime.  The government also proffered three witnesses who provided ample testimony regarding H-2A regulations.  A defense expert was not required to provide further explanation as to the regulations.  Regarding the second point, the key issue at trial was whether Bart required the workers to pay her a fee to secure employment in the United States, not whether Bart provided compensable services.  An H-2A expert would not have been able to resolve that issue.  Under these circumstances, Wold's failure to call an H-2A expert was neither unreasonable nor prejudicial.

Bart lastly argues that Wold was constitutionally deficient in not calling an H-2A worker who testified before the grand jury that he was never asked to pay a fee to secure a job with Svihel Farm, never paid a fee to secure work with Svihel Farm, and was unaware of any other workers being required to do so. Marti Decl. Ex. F, at 6:17-7:14, 8:6-9, 11:1-6. But Wold's decision could well have been strategic. The worker provided the testimony in September 2015, approximately one year before Cabrera pleaded guilty. Id. at 1. Wold could have reasonably determined that the worker - a childhood friend of Cabrera's - falsely testified to protect Cabrera and to ensure that he and other Dominican workers could continue working in the United States. Id. at 11:7-8. Further, Wold may have deemed the testimony dubious because the worker's testimony differed from several other witnesses who testified more openly about the fees they were charged. Given these potential credibility issues, Wold did not prejudice Bart by not calling the witness during trial.

## 2. Adequacy of Examination

Bart also challenges how effectively Wold examined certain witnesses. She argues that Wold inadequately cross-examined Svihel and Cabrera regarding the services Bart provided to the workers. As noted above, whether and to what extent Bart provided

17

services to the H-2A workers was not much in dispute.   The primary issue for the jury to resolve was whether Bart, directly or indirectly, mandated payments in exchange for access to work in the United States.   Whether Bart provided valuable services does not answer that question.

In any event, the record shows that Wold did elicit testimony from Svihel regarding Bart's services, which he acknowledged were significant.   See Trial Tr. at 387:19-88:4, 408:12-25, 412:25-13:23.   Wold likewise adequately cross-examined Cabrera as to the services Bart provided.   See id. at 443:2-8, 496:20-97:4, 501:4-02:17, 502:18-503:19.   Even if Wold could have or should have done more, the court cannot conclude that her cross-examination of Svihel was unreasonable or prejudicial.

Bart also argues that Wold failed to elicit valuable testimony from her during direct examination.[5]   A review of the trial transcript shows that Bart had adequate opportunity on direct and cross examination to explain and expound on her defense.   The

_____

[5]   Bart filed a declaration basically providing new testimony regarding issues central to her claim of innocence.   ECF No. 350, at 1-6.   The court will not consider such self-serving statements in assessing the instant motion.   In the declaration, Bart also attests that she spent a total of three hours speaking with Wold before trial.   Id. ¶ 27.   Having sat through the trial, the court would be surprised if that were the case given the obvious effort Wold undertook to prepare for such a complex trial.

18

transcript from Wold's examination of Bart spans seventy-four pages, <u>see</u> <u>id.</u> at 652:22-720:10, 776:4-782:8, and cross examination spanned another fifty pages, <u>see</u> <u>id.</u> at 720:15-750:18, 755:11-775:25, 782:13-788:15.   On cross, Bart was not shy and provided full answers to the questions in keeping with her defense. <u>See, e.g.</u>, <u>id.</u> at 739:1-19.   Thus, even if Wold could have asked additional questions, Bart has not established that she was unable to fully present her defense or that Wold's failure to do so constituted ineffective assistance of counsel.

**C.   Jury Instructions**

Bart argues that Wold erred in failing to request an instruction advising the jury that regulatory violations do not establish fraud in the context of a criminal proceeding.   Bart argues that such an instruction was necessary to avoid confusion caused by the government's focus on Bart's violation of various H-2A regulations.[6]   Bart acknowledges that the regulations were relevant for purposes of background but argues that the jury should have been advised as to their limited use.   The court disagrees.

---

[6]   Bart also summarily argues that her appellate counsel – not Wold – was deficient in failing to raise this issue on appeal. ECF No. 349, at 30.   Because Wold was not deficient in failing to request such an instruction, appellate counsel was likewise not deficient in not make the argument on appeal.

19

"[J]ury instructions are evaluated in the context of the entire charge and a jury is presumed to follow all instructions." United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000). The court has reviewed the jury instructions as a whole and finds that they clearly set forth the elements required to establish each of the crimes charged in the superseding indictment, which was provided to the jury. ECF No. 168, at 22-28. The instructions do not discuss the regulations, and the regulations were not provided to the jury. Further, the instructions make clear that Bart was "not on trial for any act or any conduct not specifically charged in the superseding indictment." ECF No. 168, at 7.

Under these circumstances, the court cannot conclude that Wold was unreasonable in not requesting a specific instruction regarding the limited use of underlying regulations. Nor can the court conclude that including such an instruction would have caused the jury to reach a different conclusion.

Bart also argues that Wold erred in failing to request an instruction regarding evidence under Federal Rule of Evidence 404(b). The evidence at issue involved Bart submitting false documentation regarding Horizon workers. The government proffered the evidence to establish Bart's knowledge and intent. As noted, the jury was adequately instructed as to the elements of the crimes

20

charged and was specially advised that Bart was not on trial for
conduct not charged in the superseding indictment. Further, the
evidence admitted regarding Bart's Horizon workers was minimal in
the context of the entire trial. As a result, the court is not
persuaded that Wold's failure to request a Rule 404(b) instruction
was erroneous or prejudicial.

### D.    Restitution and Forfeiture Orders

Bart lastly argues that her trial and appellate counsel were
deficient in not challenging the court's restitution and
forfeiture orders. The Eighth Circuit has unambiguously held that
"a federal prisoner cannot challenge the restitution portion of
his sentence using 28 U.S.C. § 2255, because this statute affords
relief only to prisoners claiming a right to be released from
custody." United States v. Bernard, 351 F.3d 360, 361 (2003).
This determination applies to "challenges to restitution orders
made pursuant to claims of ineffective assistance of counsel."
United States v. Badio, No. 14-cr-344(10), 2018 WL 5724048, at *3
(D. Minn. Nov. 1, 2018) (citing Shephard v. United States, 735
F.3d 797, 798 (8th Cir. 2013)). Under this authority, Bart is
foreclosed from raising a claim relating to the restitution order.

Bart argues that Bernard does not apply to forfeiture issues
and therefore does not preclude her argument on that topic. The

court disagrees.   Although Bernard does not directly address
forfeiture, it makes clear that non-custodial matters are not
properly brought under § 2255.   Bernard, 351 F.3d at 361.
Further, Bernard relies on Kaminski v. United States, 339 F.3d 84,
87-88 (8th Cir. 2003), in which the court held more broadly that
non-custodial aspects of a sentence may not be attacked through
§ 2255 unless they somehow constitute a restraint on liberty.
Other courts interpreting Kaminski have concluded that forfeiture
orders are not reviewable under § 2255.   See, e.g., United States
v. Mirando, No. 14-cr-221, 2020 WL 2572327, at *1 (E.D.N.Y. May
29, 2020); Klass v. United States, No. 11-cr-893, 17-cv-2896, 2018
WL 1281824, at *2 (S.D.N.Y. Mar. 6, 2018); United States v. Titus,
No. 11-cr-159, 2015 WL 2341590, at *8 (E.D. La. May 14, 2015).   In
light of the Eighth Circuit's unambiguous determination on this
issue, Bart is precluded from seeking relief in this motion
relating to the court's restitution and forfeiture orders.

## II.  Certificate of Appealability

To warrant a certificate of appealability, a defendant must
make a "substantial showing of the denial of a constitutional
right" as required by 28 U.S.C. § 2253(c)(2).   A "substantial
showing" requires a petitioner to establish that "reasonable
jurists" would find the court's assessment of the constitutional

claims "debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 483-84 (2000). As discussed above, the court is convinced that Bart's claims do not entitle her to relief and that reasonable jurists would not differ on the result. A certificate of appealability is not warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    The motion to vacate, set aside, or correct sentence [ECF No. 349] is denied; and

2.    Pursuant to 28 U.S.C. § 2253, the court denies a certificate of appealability.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 8, 2021

s/David S. Doty
David S. Doty, Judge
United States District Court